Dannie Lee PROCTOR, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–802.

Court of Criminal Appeals of Oklahoma.

May 22, 1975.

Rehearing Denied June 6, 1975.

J. C. Daugherty, Sandlin, Daugherty & Snow, Holdenville, for appellant.

Larry Derryberry, Atty. Gen., Bill J. Bruce, Asst. Atty. Gen., for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, Dannie Lee Proctor, hereinafter referred to as defendant, was charged with the crime of Murder in District Court Case No. CRF–72–35 in District Court, Hughes County. He was found guilty of Manslaughter in the First Degree, and sentenced to serve a term of twenty (20) years in the State penitentiary in accordance with the verdict of the jury. From that conviction he has lodged this timely appeal.

Early in the evening of August 18, 1972, Elbert Kerns was driving back and forth on the main street of Wetumka, Oklahoma. In the car with him was his cousin, Wayne Sanders. Ernest Bamberg flagged them down and asked to go riding with them. Kerns was 18, Sanders was 15, and Ernest Bamberg was 17 years of age. Some time later that evening Bamberg was killed by a bullet fired from a gun in the possession of the defendant. Of the 16 witnesses who testified for the State in the trial only Elbert Kerns and Wayne Sanders witnessed the shooting. They each told essentially the same story: Ernest Bamberg wanted to go to the defendant's house to get some free beer. The boys found the defendant at home about 8:00 p. m. It was still daylight outside. The boys were invited in and given a beer. After a few minutes, Bobby Johnston and Jean Orr came to the house. Shortly thereafter, three teenaged girls, Karen Abernathy, Janie Abernathy, and Cheryl Curran, arrived. The defendant and Janie Abernathy drove away to buy beer. Bobby Johnston and Jean Orr left. One Mike Anderson had pulled into the defendant's driveway and was talking to the girls from his car when the defendant returned. The defendant ran into the house and Anderson drove off. One of the girls shouted to shut the door. When he came back through the door the defendant was carrying a shotgun.

Sanders testified that Anderson's car was already gone and that the defendant did not point the shotgun at this time; Kerns said the defendant raised the gun and pointed it at Anderson's departing car.

Kerns testified they heard the defendant say "I should have shot him." (Tr. 34) or some similar statement. Sanders testified that he heard the defendant say that he did not like Mike Anderson's turning around in his driveway. Both boys testified that the defendant said he would shoot the next car that came by. A car did drive by shortly thereafter and the defendant put the shotgun to his shoulder and tracked the car as it moved down the street. While they were all outside the defendant dropped the shotgun to the ground and said that it was too bad that it didn't go off.

The girls left and the three boys and the defendant went inside the house. The de-

fendant put the shotgun away and took a pistol from inside a grandfather clock in the hallway. He put the pistol inside the waistband of his pants and pulled his sweatshirt over it. The boys described the pistol as a .22 revolver. Although it was a hot night, the air conditioning in the house was cold and the defendant had wrapped himself in a blanket. The three boys and the defendant settled down in the den; the boys were drinking beer and the defendant had a mixed drink in a large cup. The defendant initiated a conversation about death and killing. He asked the boys if they had ever seen anybody killed and advised them that if one killed a person it was important to kill the witnesses. He told them that he had already killed, but did not say who had been his victim. He asked Ernest Bamberg if he had ever killed anybody or if he would like to. Kerns testified that the defendant discovered that there were fewer bottles of beer than he had remembered and accused the girls, who had been at the house earlier, of taking the missing bottles. He threatened to go into town and shoot them. According to Kerns' testimony, the defendant then said he might go into town and shoot anybody at all. As Sanders relates the events, the defendant suggested that they all go into town and shoot someone. At this point the defendant had not directed any threats at the boys and they had not taken his talk of killing seriously.

Ernie Bamberg stood up and began walking back and forth in front of the defendant. According to the testimony of Kerns, the defendant told him "to walk across three more times in front of him." (Tr. 55) Ernest Bamberg replied, "I am going to walk across the floor until I blow your mind." (Tr. 56) The witness stated "on the second time the defendant said 'one more time,' and [Ernie] took two or three more steps." (Tr. 56) The witness testified that at that point the gun which the defendant had in his possession went off and Ernie stumbled and fell.

Sanders testified that after Ernie got up and began walking back and forth, the defendant told him "if you walk back two more times, I'll shoot you." He quoted Ernie as saying he was going to keep walking until "we lost our minds." (Tr. 307) Sanders testified that Ernie continued to walk back and forth and when he "got even with Elbert . . . Dannie shot him." (Tr. 310) The defendant knelt beside the boy and examined the wound. Minutes later, he helped Kerns and Sanders put the wounded boy into Kerns' car to take him the hospital. The defendant stayed behind. Before the boys left he instructed them to say they had been parked on a country road when someone shot Ernie from a passing car. The two boys did in fact tell such a story to the authorities after their arrival at the hospital, but retracted it when they learned Ernie had died.

Of the people present at the defendant's house on the night of the shooting, Mike Anderson, Bobby Johnston, Jean Orr (Jean Crawford), Cheryl Curran, Janie Abernathy and Karen Abernathy testified for the State. The testimony of the latter three witnesses corroborated the episode involving the shotgun which the boys related during their testimony.

Dr. Fred B. Jordon, a forensic pathologist, testified that he performed an autopsy on the body of Ernest Bamberg and concluded that death was caused by a bullet which perforated the septum of the heart.

The defendant testified in his own behalf and explained the events of the evening differently. He said that when Mike Anderson turned around in his yard the party of young people was "laughing and cutting up and I said 'well, I think I'll just run back in the house and get my shotgun', which I did." (Tr. 382) He too remembered the shotgun had been dropped but stated that his comment was "I'm sure glad it didn't go off." (Tr. 382) He denied ever pointing the gun at an automobile. The defendant testified that when he and

the three boys went into the house, he put the shotgun away in the hallway and took a pistol and stuck it in his waistband. He explained that he had done so because the pistol was out of its usual place. He was unable to remember the conversation he had had with the boys but denied that it concerned death or killing. He related that Ernie got up from his seat and began walking back and forth across the room saying that he was going to walk until "I blow your mind." (Tr. 390) The defendant stated that he told Ernie "well, two more times and it'll be—I guess it'll be time for you all to go home." (Tr. 391) He testified that he began to stand up and that as he did so the gun which was in his hand at that time became tangled in the blanket which was wrapped around him and discharged accidentally. He testified that at that time he was unaware of the seriousness of the injury sustained by the boy and that he believed that the bullet had only grazed the boy's arm.

The defendant argues four assignments of error. In the first he asserts that because there was no evidence in this case that the fatal act was committed in a heat of passion, his demurrer at the close of the State's evidence and his motion for directed verdict should have been sustained, as should his objection to the giving of Instruction No. 21.

■ The defendant was charged with the crime of murder in violation of the now repealed Section 701 of Title 21 of the Oklahoma Statutes. The evidence presented at trial was entirely sufficient to take the case to the jury; the judge did not err in refusing to sustain a demurrer or to direct a verdict of acquital, and the defendant does not seriously argue otherwise. The essence of his argument appears to be that because of a failure of any evidence that the fatal act was committed as the result of passion he was prejudiced by permitting the jury to consider the lesser included offense of manslaughter in the first degree. In this regard, he points to his objection at trial to the giving of In-

struction No. 21. That instruction is a standard one which warns the jury that if they find the defendant guilty of an unlawful homicide but doubt whether it is of a higher or lower degree they must give the defendant the benefit of that doubt and bring in the lower and not the higher degree of offense. The reason the defendant objected to this instruction does not appear from the record. It is clear, however, that his objection was not based upon the mention of manslaughter in the first degree contained within the instruction for the several earlier instructions directly relating to manslaughter in the first degree are not objected to; indeed, the defendant in a set of requested instructions repeatedly urged the trial court to instruct on the lesser included offense, manslaughter in the first degree, and those show the trial court's notation "given in substance." Upon such a record, defendant's argument here must be adjudged entirely without merit.

In his second assertion of error the defendant complains that the court improperly permitted the testimony of Kerns and Sanders as well as the testimony of Cheryl Curran, Janie Abernathy and Karen Abernathy about the conduct and statements of the defendant prior to the fatal incident. The defendant recognizes the general body of law which holds that it is competent in a homicide case to put in evidence the general demeanor and behavior of a defendant before the killing for the purpose of showing his state of mind at the time of the killing. He argues, however, that the testimony of which he complains was not introduced for the purpose allowed because the incident testified to involved a shotgun and the killing itself a pistol. He contends that the real purpose of this testimony was to permit the State to interject the fact that the defendant had bought beer for a teenage girl and further to interject the implication that he had cheated her out of the money she had given him to buy that beer.

■ This argument cannot be sustained. We are of the opinion that the accounts by the five witnesses of defendant's

earlier behavior with the shotgun are highly relevant to this case of homicide and competent as showing defendant's murderous state of mind. See, O'Neal v. State, 55 Okl.Cr. 388, 31 P.2d 886 (1934); McCollum v. State, 57 Okl.Cr. 381, 48 P.2d 872 (1935). It is true that the fact that this defendant bought and furnished beer to teenagers was repeatedly mentioned in the course of the testimony. The testimony was given, however, without defense objection. Failure to object, of course, waives the right to raise the matter on appeal. Campbell v. State, Okl.Cr., 462 P.2d 349 (1969). Further, the record does not support defendant's additional contention that the State improperly attempted to show, in order to prejudice the jury against him, that he cheated a young girl out of her money. In fact, Cheryl Curran, testifying about the incident with the shotgun, stated that she failed to get her change from the defendant because she was scared and "didn't care about it then." (Tr. 173)

■■■ Defendant's third proposition asserts that this case must be reversed because highly prejudicial and inflammatory comments were made by the prosecutor during his closing argument. The remarks complained of came at the conclusion of the closing argument:

". . . Ladies and gentlemen, on the 18th of August, 1972, one Ernie Bamberg died as a result of a gunshot coming from a gun held in the hands of the defendant. You are the sole judges. This gentleman since that day has been walking around Hughes County, he's been to work, he's been going up and down the road. He's been communicating with the people. He's been in his store. He's enjoyed the good life. He may be a little concerned. I'm certain anyone who has a charge pending would be concerned. The evidence has been proved all the way down through this. The State has originally introduced into

evidence at a preliminary hearing that the defendant was bound over. He was arraigned which he plead not guilty, which he has a full right to do. Every step in the process of legal procedure has been complied with. Did he say "I'm sorry". It's his accident. That's the only person who said it was an accident. The defendant, self serving. As I said a while ago, the sun went down on Ernie Bamberg on August the 18th. He died about 10 o'clock that evening. The grass is green outside and the birds sing, the leaves are full on the trees. Ernie Bamberg won't get to see those leaves on the trees and the green grass. . . . Because he's dead, and he's buried in the soil of Hughes County. This man had killed him." (Tr. 442–443)

The defendant particularly complains that the final comment invaded the province of the jury. The comment could not have had this effect, however, for the reason that the fact that this defendant killed the deceased was undisputed in the case; the sole issue at trial was whether or not that killing was accidental. In Battle v. State, Okl.Cr., 478 P.2d 1005 (1970) we quoted with approval from Harvell v. State, Okl. Cr., 395 P.2d 331 (1964) the following:

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. Counsel for both the State and the defendant have a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom. It is only when argument by counsel for the State is grossly improper and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument."

We are of the opinion that the comments challenged by the defendant are not so grossly improper as to merit a reversal or a reduction of the sentence imposed in this case.

In his concluding proposition, the defendant again asserts that the trial judge committed error in giving Instruction No. 21. That instruction reads in its entirety:

"You are instructed that if you find and believe from the evidence in this case, beyond a reasonable doubt, that the defendant is guilty of either murder or manslaughter in the first degree or manslaughter in the second degree, but you entertain a reasonable doubt as to which degree you believe the defendant to be guilty, then it is your duty to resolve this doubt in favor of the defendant, and convict the defendant of the lesser degree of homicide—that is, manslaughter in the second degree."

Any defect in this instruction would appear to be in favor of the defendant—in so much as it appears to authorize the jury to find the defendant guilty of manslaughter in the second degree if they have a doubt whether he is guilty of murder or manslaughter in the first degree. He states, however, that the giving of the instruction constituted reversible error for two reasons: first, because there was no evidence authorizing an instruction on manslaughter in the first degree; and, second because the charge was improperly prosecuted under the provisions of 21 O.S., § 701, repealed by the 1973 legislature, and which was punishable by life imprisonment or by death.

The question of propriety of the manslaughter instruction has been previously discussed and determined. Putting aside any question of how one objection to Instruction No. 21 can be said to have raised and preserved the matter for consideration on appeal, we find defendant's second assertion to be entirely without merit; the defendant was properly charged under the statute which was in effect at the time of the offense, and the jury was not instructed upon the death penalty.

Affirmed.

BUSSEY and BLISS, JJ., concur.